## EUNICE ANDREWS *versus* JOHN SPARHAWK *et al.*

Payment of a legacy presumed, under the circumstances, after the lapse of twenty
years from the time when it became due and payable.

A *bonâ fide* purchaser of land charged by a testator with the payment of his debts and
legacies generally, is not bound to see to the application of the purchase money.

BILL in equity, brought by a person *non compos mentis*,
by her guardian. The bill alleges that John Andrews, of
Marblehead, on March 28, 1801, made his last will, in which
he devised to his grandson, John Andrews junior, certain
real estate in Marblehead, and charged the same with a cer-
tain legacy to Eunice Andrews, the plaintiff, of 600 dollars,
to be paid to her when she should arrive at the age of twenty-
one years or at her marriage, and also with an annuity of 50
dollars, to be paid to her every year, commencing at the
death of the testator, until she should arrive at the age of
twenty-one years or be married, whichever should first hap-
pen ; that on July 1, 1803, the testator died ; that on the
same day John Andrews junior entered upon the estate so
devised ; that the testator left estate sufficient to pay all his
debts and legacies ; that the will was proved on August 1,
1803, and the executor therein named accepted the trust and
took the estate into his hands, and assented to the legacy and
annuity to the plaintiff ; that the plaintiff became of age on
October 1, 1804, on which day there were due to her the

legacy of 600 dollars, and on account of the annuity the sum of 146 dollars ; that on March 5, 1807, John Andrews junior conveyed the real estate to Jesse Blanchard ; that Blanchard, on January 15, 1827, conveyed it to William Elliot ; that Elliot, on April 5, 1828, conveyed it to Samuel Bradstreet ; that Bradstreet, on April 20, 1829, conveyed it to the same Blanchard ; that Blanchard conveyed it, on July 21, 1829, to Benjamin Cheever, in mortgage, and on August 5, 1830, to Benjamin Porter and Joseph W. Green, in mortgage ; that in all these conveyances the land passed charged with the legacy and annuity to the plaintiff ; that on November 23, 1830, Blanchard died intestate, leaving some of the defendants his heirs at law ; that on December 7, 1830, administration of the estate of Blanchard was granted to Sparhawk, one of the defendants ; and that Sparhawk and the heirs of Blanchard have entered upon the estate, charged as above mentioned, and are now in possession thereof, by means whereof they have become trustees of the plaintiff and liable for the payment of the sums of money before mentioned and interest thereon, and bound to account for the same. The bill then alleges a demand by the plaintiff's guardian upon Blanchard, and upon his administrator and heirs, and a refusal by them to pay those sums of money ; and it prays that they may be held to make answer, and to pay over those sums to the plaintiff, with interest.

Sparhawk and the heirs of Blanchard, in their answer, state that John Andrews senior, by his will and codicil, which they annex to their answer, constituted John Andrews junior sole executor, and devised to him the real estate in question, together with other real and personal estate, charging him as executor with the payment thereout of all the debts of the testator, and all legacies and annuities bequeathed by the will ; that John Andrews junior became seised and possessed of the real and personal estate, subject, as executor, to the duty of paying thereout the debts and legacies ; that on August 1, 1803, having obtained probate of the will and codicil, he took upon himself the execution thereof, and on February 2, 1807, gave bonds for the faithful performance of his duty as executor ; that on March 5, 1807, Blanchard

purchased of him the real estate in question, and paid him therefor the sum of 4000 dollars, which was the full value of the estate ; that Blanchard, at the time of his purchase, had not, and never after had, any notice or reason to suspect that the legacy and annuity to the plaintiff were unpaid, or that the money which he paid to the executor was not duly applied to the payment of the debts and legacies which by the will the executor was directed to pay ; that the executor sold the estate to Blanchard in execution of the will, for the purpose of raising money to reimburse payments already made, or to make payment of the debts and legacies ; that upon such conveyance to Blanchard the estate in question ceased to be chargeable for the debts and legacies, being fully administered ; that Blanchard was informed and believed, and the defendants are informed and believe, that the legacy and annuity to the plaintiff were paid on or about March 5, 1807 ; that on that day Blanchard took possession of the real estate under the deed to him, as the owner thereof in fee simple, discharged of any trust or liability whatsoever, and continued in possession until his death on November 23, 1830, and that in the faith that his title was complete he expended large sums of money in improving the estate, and executed the several conveyances thereof in the bill mentioned, containing covenants of title ; that at the time of the testator's decease the plaintiff was *compos mentis* and capable of taking care of her property, and that she continued so until about January 1, 1811 ; and that she then became chargeable as a pauper to the inhabitants of Marblehead, and from time to time ever since has been supported by them as such ; that the plaintiff, from the time of the conveyance of the estate to Blanchard until she became *non compos mentis*, and the inhabitants of Marblehead from January 1, 1811, to the day of exhibiting this bill, had full knowledge of the conveyance of the estate to Blanchard for a valuable consideration, and of the expenditures which he from time to time made thereon, and of the conveyances by him executed, and yet, from the date of the conveyance to him until about January 1, 1828, he had no notice that the legacy and annuity were unpaid ; and that the bill is exhibited, as the defendants believe, for the benefit

of the inhabitants of Marblehead. The defendants admit the demand and refusal alleged in the bill, and they say that the legacies to the plaintiff are fully paid, and that she has also lost all right to remedy therefor in law and equity, if she ever had any cause of action ; that the same, if any, accrued more than six years, and more than twenty years, before the exhibiting of this bill, and is barred by the statute of limitations ; and that if the plaintiff has any right or remedy or cause of suit, this Court is not competent to take jurisdiction thereof upon this bill as a court of equity ; and that the defendants are not, and never were, trustees of the plaintiff, or of any one, on account of those legacies, nor liable therefor in any form.

The plaintiff filed a general replication, and at the hearing, depositions were read on each side.

In the will are the following provisions :— " To the same John Andrews junior, my grandson, I give, devise and bequeath all my present homestead, fish fence land, pasture land and' farm situate &c., with all the warehouses &c. thereon, and the utensils &c., and all my farming cattle and stock, to him, his heirs and assigns forever, ·the said homestead, lands and farm to be subject and liable as follows, that is to say, to the payment of all my debts, funeral expenses and all other charges and expenses which shall arise in the settlement of my estate and affairs ; also to the annuities and legacies hereinafter bequeathed to my other grandchildren." — " To each of my other grandchildren, namely, Eunice Andrews &c., minors, in aid of their education and maintenance severally and respectively, I give and bequeath the sum of fifty dollars, to be paid for the use of each of them annually, commencing from my decease ; of the said Eunice until her marriage or full age of twenty-one years " &c. — " To each of my said grandchildren, Eunice &c., I give and bequeath the sum of six hundred dollars ; one such sum to be paid to the said Eunice at her marriage or at her full age, whichever shall first happen." — " And I hereby appoint the said John Andrews junior, my grandson, sole executor of this my last will and testament."

*Nov. 6th.*    *E. Hersey Derby,* for the plaintiff, contended, 1. that the

Court had equity jurisdiction in the case, there being " a     Andrews
trust arising under a will," and also " in the settlement of an     Sparhawk.
estate ; " in addition to which, there was no " plain, ade-
quate and complete remedy at law ; " and that if it was in-
tended to raise the question of jurisdiction, a demurrer, or a
plea to the jurisdiction, should have been filed. *St.* 1817,
c. 87 ; *Jones* v. *Boston Mill Corp.* 4 Pick. 507 ; *Jennison* v.
*Hapgood*, 7 Pick. 1 ; *Gibbens* v. *Peeler*, 8 Pick. 254 ; *Stone*
v. *Hobart*, ibid. 464 ; *Gardner* v. *Gardner*, 3 Mason, 178 ;
*Chapin* v. *Hastings*, 2 Pick. 362 ; *Pelletreau* v. *Rathbone*,
18 Johns. R. 428.

2. The real estate was charged with the legacy and the
annuity to the plaintiff. *Stackhouse* v. *Barnston*, 10 Ves. 453 ;
*Birdsall* v. *Hewlett*, 1 Paige, 33 ; *Cook* v. *Grant*, ibid. 408 ;
*Abrams* v. *Winship*, 3 Russell, 350 ; *Mortimer* v. *West*,
2 Simons, 274 ; *Reeves* v. *Newenham*, 2 Ridgew. Irish Parl.
Cas. 11 ; *Seal* v. *Tichener*, 2 Dickens, 444 ; *Miles* v. *Leigh*,
1 Atk. 573 ; *Sadd* v. *Carter*, Prec. Ch. 27 ; *Alcock* v. *Spar-
hawk*, 2 Vern. 228 ; *Livingston* v. *Ex'ors of Livingston*,
3 Johns. R. 189 ; *Beecker* v. *Beecker*, 7 Johns. R. 99 ;
*Swasey* v. *Little*, 7 Pick. 296 ; *Baker* v. *Dodge*, 2 Pick.
619 ; *Gardner* v. *Gardner*, 3 Mason, 178.

3. The sale to Blanchard did not exonerate the land from
the charge. It is alleged in the answer, that the land was
sold by Andrews as executor, to pay debts and legacies ;
and that so it was fully administered upon ; but this cannot
be, for the land could not be sold by him as executor, ex-
cept under a license of court. It was in fact sold by him
as devisee. Even if Blanchard was an innocent purchaser,
the land was bound. Where lands are ordered by a testator
to be sold to pay special debts or legacies, the purchaser
must see to the application of the purchase money. But
Blanchard had notice of the charge, or the means of notice ;
he was a surety on the executor's administration bond.
*Murray* v. *Ballou*, 1 Johns. Ch. R. 567 ; *Wigg* v. *Wigg*,
1 Atk. 382 ; *Newman* v. *Kent*, 1 Meriv. 240 ; *Spalding* v.
*Shalmer*, 1 Vern. 301 ; *Abbot* v. *Gibbs*, 1 Eq. Ca. Abr. 358 ;
*Rogers* v. *Skillicorne*, 1 Ambl. 188 ; *Osborne* v. *Lea*, 9 Mod.
97 ; *Horn* v. *Horn*, 2 Sim. & St. 448 ; *Jackson* v. *Rowe*,

ibid. 472 ; *Bovey* v. *Smith,* 1 Vern. 149 ; *Dunch* v. *Kent,* ibid. 319 ; *Draper's Co.* v. *Yardley,* 2 Vern. 662.

The statute of limitations is not applicable to the case. The plaintiff is not claiming against an executor, but in virtue of a charge on real estate under a will. *Kane* v. *Bloodgood,* 7 Johns. Ch. R. 116. The presumption of payment arising from the lapse of twenty years, is rebutted by proof of the insolvency of John Andrews junior, the insanity of the *cestui que* trust, her near relationship to John Andrews junior, and his absence from the country. In 1822 a suit was brought against him for the annuity, and there has been a constant demand on the defendants since that time. *Cupit* v. *Jackson,* 13 Price, 721 ; *Prevost* v. *Gratz,* 6 Wheat. 498 ; *Jenkins* v. *Hopkins,* 9 Pick. 544 ; *Fladong* v. *Winter,* 19 Ves. 196 ; *Hillary* v. *Waller,* 12 Ves. 266 ; *Stackhouse* v. *Barnston,* 10 Ves. 453 ; *Pickering* v. *Ld. Stamford,* 2 Ves. jun. 283 ; *Eldridge* v. *Knott,* Cowp. 214 ; *Mayor of Hull* v. *Horner,* ibid. 102 ; *Jones* v. *Turberville,* 2 Ves. jun. 12 ; *Bond* v. *Hopkins,* 1 Sch. & Lefr. 413.

*Choate,* for the defendants, said that the plaintiff had at one time an adequate remedy at law against the executor, (*St.* 1783, *c.* 24, § 17,) and that that remedy being barred by the statute of limitations, in consequence of her laches, she is not entitled to a bill in equity. *Robinson* v. *Hook,* 4 Mason, 150 ; Angell on Limit. 339, 350 ; *Murray* v. *Coster,* 20 Johns. R. 576 ; *Cholmondely* v. *Clinton,* 2 Jac. & Walk. 192 ; *Kane* v. *Bloodgood,* 7 Johns. Ch. R. 70, 116.

The lapse of twenty years, with other circumstances proved, raises a strong presumption that the legacy and the annuity have both been paid. *Gore* v. *Brazier,* 3 Mass. R. 542 : *Clark* v. *Hopkins,* 7 Johns. R. 556 ; *Colsell* v. *Budd,* 1 Campb. 29 ; Phil. Ev. (1st Amer. ed.) 113, 114 ; *Hovenden* v. *Annesley,* 2 Sch. & Lefr. 636 ; 2 Cruise's Dig. *tit.* 15, *c.* 3, § 56 *et seq.*; *Moore* v. *Cable,* 1 Johns. Ch. R. 385 ; *Demarest* v. *Wynkoop,* 3 Johns. Ch. R. 129 ; *Decouche* v. *Savetier,* ibid. 216 ; *Bonney* v. *Ridgard,* 1 Cox, 145 ; *Beckford* v. *Wade,* 17 Ves. 87, 96 ; *Shaver* v. *Radley,* 4 Johns. Ch. R. 310.

The trust fund being for the payment of debts and legacies

generally, a purchaser for a full consideration was not bound to see to the application of the money. Cruise's Dig. *tit.* 12, *c.* 4, § 16, 22 ; *Gardner* v. *Gardner*, 3 Mason, 178 ; *Elliot* v. *Merriman*, 1 Atk. 41 ; 6 Ves. 654, note.

*Saltonstall* replied.

WILDE J. drew up the opinion of the Court. This is a bill by a legatee to obtain payment of a legacy bequeathed to her by the last will and testament of John Andrews her grandfather, which she claims to charge on the lands of the deceased in the hands of the defendants. The testator devised to his grandson John Andrews, his heirs and assigns, all his homestead farm and other lands and property ; the homestead lands and farm to be subject to the payment of all his debts, funeral expenses, and all other charges and expenses which should arise in the settlement of his estate ; and also to the annuities and legacies therein after bequeathed to his other grandchildren, including the plaintiff, to whom was bequeathed the sum of 600 dollars and an annuity of 50 dollars, until her marriage or full age, whichever should first happen.

The testator died in 1803, and the plaintiff arrived at full age in 1804, when the legacy and annuity became due and payable. The will was duly proved by John Andrews the devisee, who was appointed executor ; and having given bond for the faithful discharge of his trust, in 1807 he sold and conveyed for a valuable consideration the lands devised, to Jesse Blanchard, from whom the defendants, as heirs and mortgagees, derive title. And they rely on two grounds of defence : 1. That the legacy and annuity have been paid ; 2. That Blanchard, under whom they claim, was a *bonâ fide* purchaser, for a valuable consideration, and the purchase money being paid, he was not bound to look to its application, but took the estate discharged of the trust or lien.

On both grounds we think the defence is well sustained.

1. As to payment, it appears in evidence, that from 1803 to 1809, when the plaintiff was removed to the poor-house, the executor was at very considerable expense for her support and maintenance, physician's bills, &c., the exact amount of which does not appear, nor at this distance of time can it probably be ascertained, but she was received at the poor-

*Andrews*
*v*
*Sparhawk.*

*April term,*
*1833.*

Andrews
v.
Sparhawk.

house as a pauper, and the impression on the minds of the overseers of the poor was, that her property was wholly expended. No claim was made on the executor until 1822, and then only for the small annuity, and no claim was made on Blanchard until 1825, more than twenty years after the legacy and annuity became due and payable. The persons who may be supposed to have knowledge of the facts in dispute, are either dead, or their memories so impaired that little reliance can be placed on their statements. These facts and circumstances, considering the great length of time the claim now set up has remained dormant, are amply sufficient, as we think, to support the presumption of payment. The judgment recovered against the executor cannot have much weight in repelling this presumption ; since it does not appear that any defence was made, and the executor was then insolvent, and actually confined in gaol for debt. If a party will sleep over his rights for a great length of time, he must not be permitted to take advantage of his own laches, and to call for full proof, which it may be impossible for the other party to procure. Stale demands are not to be favored in a court of equity. The rule laid down in the case of *Hovenden* v. *Lord Annesley*, 2 Sch. & Lefr. 636, is, that every new right of action in equity that accrues to the party, whatever it may be, must be acted upon, at the utmost, within twenty years. " So in every case of equitable title, (not being the case of a trustee, whose possession is consistent with the title of the claimant,) it must be pursued within twenty years after the title accrues."

Such length of time does not, it is true, operate as an absolute bar, for it may be satisfactorily accounted for by proof of special circumstances ; but it furnishes strong evidence of the extinguishment of the claim or right set up, and is to be held conclusive unless the presumption can be repelled by other evidence. In the present case there is very little evidence impairing the force of the presumption arising from the lapse of time, but much which strengthens and confirms it.

2. The second ground of defence appears to us to have been also well maintained. There is no reason to doubt

that Jesse Blanchard was a fair and *bonâ fide* purchaser, and that the purchase money was fully paid. The deed is *primâ facie* evidence of payment, and it is confirmed by other evidence as satisfactory, on the whole, as under the circumstances of the case could have been reasonably expected.

Andrews
*v.*
Sparhawk.

Then was the purchaser bound to see ' to the application of the purchase money ? We think clearly that he was not. " The settled distinction is," as *Story* J. remarks in the case of *Gardner* v. *Gardner & al.*, 3 Mason, 218, " that if a trust is created for specific or scheduled debts, the purchaser is bound to see to the application of the purchase money. But if the trust is for the payment of debts generally, the purchaser is not bound to see to the application of the pur chase money ; and if he pays it over to the trustee, he, and the estate in his hands, stand discharged from the trust." This is a reasonable distinction and well supported by authority Lord *Eldon* lays down the same doctrine in 6 Ves. 654, note. He says that it was long settled, that " where a man by deed or will *charges* or orders an estate to be sold for payment of debts generally, and then makes specific dispositions, the purchaser is not bound to see to the application." See also Cruise's Dig. *Trust, tit.* 12, *c.* 4 ; Co. Lit. 290, Butler's note, 249, § 12.

It has been argued that legacies are on a footing with scheduled debts, since the will shows their amount and to whom they are payable. But debts are to be first paid, and until they are paid the application of the purchase money cannot be made to the payment of the legacies ; they cannot therefore stand on a better footing than debts not scheduled.

It has also been argued, that there is a distinction between a devise of an estate in trust to be sold, and an estate charged in a trustee's hands for the payment of debts and legacies. We think there is no good ground for this distinction, either in principle or upon authority. In both cases the purchaser would be subjected to the same difficulty and hazard, if he were required to see to the application of the purchase money. *Elliot* v. *Merriman*, 2 Atk. 41 ; Co. Lit. 290, Butler's note 249. § 12 , 3 Mason, 218.

34 *

It has been urged, that the doctrine now laid down will very much impair the security of legatees and *cestui que trusts* ; but the contrary doctrine would be most embarrassing and injurious to fair purchasers, who could never be safe against dormant claims, unless they should pay under the sanction of a court of equity.

In the present case the plaintiff had ample security for her legacy, and if it is now lost, it has been lost by the laches of the inhabitants of Marblehead, who have so long acted for her, and for whose use this suit is prosecuted. No laches have been proved against the purchaser, or those claiming under him. There is no proof that he had any knowledge of the misapplication or intended misapplication of the purchase money. Under these circumstances it appears to the Court, that there is manifestly no ground of equity on which the present bill can be maintained.   .

*Bill dismissed with costs.*